(No. 19605.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LAURA ALLEN, Plaintiff in Error.

*Opinion filed December 20, 1929.*

H. R. LIGHTFOOT, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, and D. F. RUMSEY, State's Attorney, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Laura Allen and D. Waldo Golliher, her son, were jointly indicted in the circuit court of Saline county for burglary, larceny and buying, receiving and aiding in con-

cealing stolen property. They pleaded not guilty. Upon a jury trial Golliher was found guilty of larceny but he was granted a new trial. Laura Allen was found guilty of buying, receiving and aiding in concealing stolen property of the value of $45, knowing the property to have been stolen. Her motion for a new trial was denied and she was sentenced to the penitentiary. She prosecutes this writ of error for a review of the record.

During the night of August 15, 1927, the house of Hez Carnahan, situated about two and one-half miles south of Cottage Grove, a small settlement in the eastern part of Saline county, was entered and two feather beds, seven quilts, a counterpane, a robe, a clock and several pounds of honey were taken. Carnahan had spent the night at his son's home about a mile distant, and discovered his loss upon his return to his own house the following morning. A beehive and four chickens were also missing from his premises. Remnants of a burnt beehive and a newspaper with Golliher's name upon it were found near a public highway about two and one-half miles east of Carnahan's house.

On August 17, the sheriff of Saline county, armed with a search warrant and accompanied by Carnahan, a farmer named Berry and a deputy sheriff went to the house of the plaintiff in error in Dorris Heights, near the city of Harrisburg, and about ten miles from the scene of the burglary. When the sheriff stated the purpose of his call, the plaintiff in error first said that he would find nothing in her house, but later told him that she thought she might have Carnahan's goods; that she had bought them the afternoon before from a man who lived somewhere in the township of Cottage Grove, and that she had paid $10 for them. Shortly thereafter Carnahan's daughters, Lillian Wiedeman and Bessie Church, were brought to the home of the plaintiff in error and they identified a clock, a robe, a feather bed, and seven quilts as the property of their father. The

value of these chattels was fixed at $45 by Carnahan and several other witnesses.

The plaintiff in error testified that a man appeared at her home who gave his name as Wendle, and said he was driving an automobile but could proceed no farther because one of the tires to his car had given out; that the caller inquired whether she could give him a used tire to take the place of the worthless one; that when he was informed she could not, he stated that he had second-hand goods in his car which he would be compelled to sell in order to obtain the money necessary to buy a tire; that he offered to sell the goods to her whereupon she inquired whether they belonged to him and receiving an affirmative answer, stated that if she bought them a bill of sale to evidence the transaction would be required; that they went to a justice of the peace in the city of Harrisburg who drew a bill of sale by which, for the consideration of $10, Wendle, recited to be a resident of Carmi, in White county, sold and transferred to her a feather bed, seven quilts, a robe, a clock and three chickens; that she paid him the purchase price and received the goods, and that he paid the justice of the peace one dollar for his services and delivered the bill of sale to her. Two sisters of the plaintiff in error and a third person named Ray Mick corroborated her testimony concerning Wendle's statements at her home and also with reference to the purchase of the goods and the delivery of the bill of sale. A justice of the peace testified that the bill of sale was drawn by him but that he was not acquainted with the seller. The feather bed and quilts were more than twenty years old, soiled and extremely dirty. Several mud dauber's nests were found attached to the feather bed. The two sisters testified that the chattels purchased by plaintiff in error were not worth $10.

It is contended by the plaintiff in error that the evidence fails to establish the crime of buying or receiving stolen goods with knowledge that the property had been stolen.

Direct and positive proof of guilty knowledge cannot often be obtained and is not required, but circumstances such as the purchase of goods for less than their real value from an unknown person without any inquiry as to the source of his title, or other circumstances which will induce a belief in the mind of a reasonable person that the property was stolen, are sufficient. (*People* v. *Grove,* 284 Ill. 429; *Delahoyde* v. *People,* 212 id. 554; *Cohn* v. *People,* 197 id. 482; *Huggins* v. *People,* 135 id. 243.) No such incriminating circumstances appear in this case. While the plaintiff in error was engaged in the performance of her household duties, a stranger called at her door and representing that he was without money and therefore unable to proceed on his way induced her to buy certain second-hand chattels from him. The goods were of little value and of a character that might be carried in an automobile passing over the public highways of the State. Before the plaintiff in error bought the goods, she inquired of the stranger whether they belonged to him. Assured that he was the owner, she demanded a bill of sale before she would consummate the purchase. The required instrument was drawn by a justice of the peace in a neighboring city and executed by the seller before the consideration was paid. The entire transaction was conducted in the presence of witnesses and no secrecy characterized it. The evidence, taken as a whole, tends to show, not that the plaintiff in error had knowledge of the larceny of the goods, but that she made the purchase in good faith. A reasonable doubt of her guilt clearly appears and the verdict and judgment must therefore be set aside.

The judgment of the circuit court of Saline county is reversed and the cause is remanded to that court.

*Reversed and remanded.*